```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION
```

| | |
|---|---|
| WESTCOTT HOLDINGS, INC., § <br> f/k/a SPECIALTY PIPING § <br> COMPONENTS, INC., and § <br> POVL JORGENSEN, SHERRI FRUGE, § <br> PERRY CULP, ALLAN HOPKINS, § <br> PETER OFFERMAN, and JACK STONE, § <br>  § <br>     Plaintiffs, § <br>  § <br> v.  § <br>  § <br> MONITOR LIABILITY MANAGERS, § <br> INC. and CAROLINA CASUALTY § <br> INSURANCE COMPANY, § <br>  § <br>     Defendants. § | CIVIL ACTION NO. H-06-1746 |

MEMORANDUM AND ORDER

Pending are Plaintiffs Westcott Holdings, Inc., f/k/a Special Piping Components, Inc., Povl Jorgensen, Sherri Frugé, Perry Culp, Allan Hopkins, Peter Offerman, and Jack Stone's Motion to Remand (Document No. 14) and Defendants Monitor Liability Managers, Inc., and Carolina Casualty Insurance Company's Corrected Motion to Dismiss (Document No. 7).  After having carefully considered the motions, responses, reply, sur-reply, and the applicable law, the Court concludes as follows.

A.  Background

This case is an insurance coverage dispute.  Povl Jorgensen, Sherri Frugé, Perry Culp, Allan Hopkins ("Hopkins"), Peter

Offerman, and Jack Stone (collectively, the "Directors and Officers") served as directors and officers of Specialty Piping Components, Inc., now known as Westcott Holdings, Inc. ("Westcott") (collectively with the Directors and Officers, "Plaintiffs"), and are named insureds on a directors' and officers' liability insurance policy ("Policy") issued to Westcott by Carolina Casualty Insurance Company ("Carolina Casualty") and Monitor Liability Managers, Inc. (collectively, "Defendants"). Plaintiffs brought suit in state court, asserting breach of contract and various other state law claims, based on Defendants' refusal to indemnify Plaintiffs pursuant to the Policy for costs of defense incurred in two underlying lawsuits. *See* Document No. 14 ex. A. Defendants removed the case to federal court, contending that Plaintiff Hopkins, who shares the same state of residence as Carolina Casualty, was improperly joined and that his citizenship should be disregarded for diversity purposes.[1]  Document No. 2 at 1. Plaintiffs move to remand, arguing that Hopkins, as one of the Directors and Officers, has articulated a reasonable basis for recovery under the insurance agreement and did not improperly join as a Plaintiff.

---

[1] Neither party disputes that the amount in controversy exceeds the jurisdictional minimum and, indeed, it is clear from the face of the petition that plaintiffs seek at least $310,000 in damages, plus attorneys' fees. *See* Document No. 14 ex. A ¶¶ 12-13, 25, 28.

2

B.  <u>Standard of Review</u>

A defendant may remove to federal court a civil action over which the federal court has diversity jurisdiction.  *See* 28 U.S.C. § 1441(b).  "[U]nder the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-state defendant."  <u>Salazar v. Allstate Texas Lloyd's, Inc.</u>, 455 F.3d 571, 574 (5th Cir. 2006).  This Court and others have also applied the doctrine to nondiverse plaintiffs.  *See* <u>Oliva v. Chrysler Corp.</u>, 978 F. Supp. 685, 689 (S.D. Tex. 1997) (Gilmore, J.); <u>Nelson v. St. Paul Fire & Marine Ins. Co.</u>, 897 F. Supp. 328, 331-32 (S.D. Tex. 1995) (Kent, J.); *see also* <u>Benjamin Moore & Co. v. Borden</u>, 318 F.3d 626, 630-31 (5th Cir. 2002) (assuming without deciding "that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); <u>Guillot v. Credit Suisse Boston, LLC</u>, No. Civ. A. 03-0797, 2005 WL 2037372, at *5 (E.D. La. July 21, 2005); <u>Sweeney v. Sherwin Williams Co.</u>, 304 F. Supp. 2d 868, 872 n.2 (S.D. Miss. 2004); <u>Miller v. Home Depot, U.S.A., Inc.</u>, 199 F. Supp. 2d 502, 508 (W.D. La. 2001); <u>Elk Corp. of Tex. v. Valmet Sandy-Hill, Inc.</u>, No. Civ. A. 3:99-cv-2298G, 2000 WL 303637, at *2 (N.D. Tex. Mar. 22, 2000); <u>Sims v. Shell Oil Co.</u>, 130 F. Supp. 2d 788, 796 (S.D. Miss. 1999).  *But see* <u>Johnston Indus., Inc. v. Milliken & Co.</u>, 45 F. Supp. 2d 1308, 1312-1314 (M.D. Ala. 1999) (relying on the dearth of

then-existing case law construing improper joinder doctrine in the context of nondiverse plaintiffs to reject its application).

The removing party has the heavy burden of proving improper joinder by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003). *See also* Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002) (describing the "heavy burden" on the party asserting improper joinder). Under the second prong, this "heavy burden" is all the greater when a defendant challenges not the plaintiff's improper joinder of a nondiverse defendant but, instead, challenges the plaintiff for having improperly joined *himself* in the case as a *plaintiff*. The usual standard when considering improper joinder of a nondiverse defendant is whether the removing defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the nondiverse defendant. *See* Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 125 S. Ct. 1825 (2005). In making this determination, a court may proceed in one of two ways:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there

>    is no improper joinder.  That said, there are cases,
>    hopefully few in number, in which a plaintiff has stated
>    a claim, but has misstated or omitted discrete facts that
>    would determine the propriety of joinder.  In such cases,
>    the district court may, in its discretion, pierce the
>    pleadings and conduct a summary inquiry. . . .  [W]e
>    caution that a summary inquiry is appropriate only to
>    identify the presence of discrete and undisputed facts
>    that would preclude plaintiff's recovery against the in-
>    state defendant.

Id. at 573-74.  If, after examining the pleadings, the court determines that it is appropriate to pierce the pleadings and conduct a summary inquiry, limited discovery into jurisdictional facts might be appropriate.  Id. at 574.  Even under the summary inquiry, however, the court must resolve all factual disputes and ambiguities in state law in favor of the plaintiff, taking into account the status of discovery and what opportunity the plaintiff has had to develop his or her claims against the nondiverse defendant.  *See* McKee v. Kansas City S. Ry. Co., 358 F.3d 329, 334 (5th Cir. 2004).  If the record reveals a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court.  Rubin v. Daimlerchrysler Corp., No. Civ. A. H044021, 2005 WL 1214605, at *2 (S.D. Tex. May 20, 2005) (Rosenthal, J.).

### C.  Discussion

Defendants do not allege actual fraud in the pleading of jurisdictional facts.  Instead, they assert that Plaintiff Hopkins

5

improperly joined in this case as a Plaintiff because the facts as pleaded preclude any possible recovery by him.[2]  Document No. 2 at 4-5, 7.  Under Texas law, a plaintiff seeking recovery under an insurance policy must show: "(1) the existence of an insurance policy in full force and effect at the time of the loss, (2) the occurrence of loss within the coverage of the policy, and (3) the failure of the insurer to pay for the loss incurred."  S. County Mut. Ins. Co. v. Dekle, 593 S.W.2d 131, 133 (Tex. Civ. App.--Waco 1979, no writ); *see also* Westcott Holdings, Inc. v. Monitor Liab. Managers, Inc., No. Civ. A. H-05-1945, 2005 WL 2206196, at *3 (S.D. Tex. Sept. 12, 2005) (quoting Dekle).  Defendants do not dispute that the Directors and Officers, including Hopkins, are insured under the Policy, the Policy was in effect during the relevant period, and Defendants have not paid Plaintiffs' claims.  The only question, therefore, is whether Plaintiffs, and in particular, Hopkins, have stated a loss within the scope of the Policy.

---

[2] Defendants emphasize the procedural history of this case, in particular, a prior proceeding filed by Westcott, which the Defendants removed, and which Westcott then voluntarily dismissed without prejudice after unsuccessfully attempting to join the Directors and Officers as plaintiffs. *See, e.g.,* Document No. 2 at 2-3; Document No. 18 at 1-3.  Thus, Defendants suggest that the joinder of these Plaintiffs is a clear attempt to thwart the exercise of federal jurisdiction. However, the motive for joining a nondiverse party is irrelevant to analysis of joinder.  *See* Smallwood, 385 F.3d at 574 ("In this inquiry the motive or purpose of the joinder . . . is not relevant.").

The facts pled by Hopkins and his fellow Plaintiffs are that they were insureds under the Policy, that there were two lawsuits filed against their company and its officers and directors, that there were costs of defense incurred that were covered Loss under the Policy, that their company was insolvent, and that the company's "senior secured creditor had left money behind to cover some of [Westcott's] expenses, including the expense of defending the [two] lawsuits, which money the company used to pay the expenses, and that Defendants have refused to reimburse Plaintiffs for the Loss covered by the Policy."  *See* Document No. 14 ex. A ¶¶ 11-14.

Part I of the Policy, incorporated in Plaintiffs' petition, defines the scope of coverage:

> Coverage A.    Directors and Officers Insurance
>
> This Policy shall pay the Loss of each and every Director or Officer of the Company arising from any Claim first made against the Directors or Officers during the Policy Period . . . for any actual or alleged Wrongful Act, *except and to the extent that the Company has indemnified* the Directors or Officers. . . .
>
> Coverage B.    Corporate Liability Insurance
>
> This Policy shall pay the Loss of the Company arising from any:
>
> 1. Securities Claim first made against the Company, or
> 2. Claim first made against the Directors or Officers,

> during the Policy Period . . . for any actual or
> alleged Wrongful Act, but, in the case of Coverage
> B.2 above, only to the extent that the Company has
> indemnified the Directors or Officers for such Loss
> as permitted by law.

Document 14 ex. A-1 § II.  "Loss" is defined as:

> [D]amages, judgments, settlements, and Costs of
> Defense; however Loss does not include . . . any
> amount for which the Insureds are not financially
> liable or which are without legal recourse to the
> Insureds. . . .

Document 14 ex. A-1 § III.I.  According to Defendants, Plaintiffs' petition forecloses any potential for recovery to the Directors and Officers by stating that: (1) "[Westcott] paid for all the expenses arising out of the [underlying] lawsuits[,]" Document 14 ex. A ¶ 14; and (2) Westcott "indemnified the Officers and Directors" for the costs, id. ¶ 17.[3]

Plaintiffs may plead inconsistent claims and facts in support of alternative theories of recovery.  See FED. R. CIV. P. 8(e)(2); TEX. R. CIV. P. 48 ("A party may . . . state as many separate claims or defenses as the party has regardless of consistency. . . .").

---

[3] Defendants also cite to a petition filed by Westcott in a previous related case.  Document No. 2 at 4-5, 7; Document No. 18 at 5 (quoting Westcott's previous allegations that the costs of defense "were paid with funds left behind by [Westcott's] sole shareholder and secured lender").  Contrary to Defendant's assertions, see Document No. 2 at 7; Document No. 18 at 5, such a statement is "not conclusive and binding in a separate case from the one in which the admission [was] made." Universal Am. Barge Corp. v. J-Chem, 946 F.2d 1131, 1142 (5th Cir. 1991).

*See also* Rodriguez-Suris v. Montesinos, 123 F.3d 10, 20 (1st Cir. 1997) (discussing Rule 8(e), and noting, "[e]specially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent pleading"); Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir. 1985); Zimmerman v. First Am. Title Ins. Co., 790 S.W.2d 690, 698 (Tex. App.--Tyler 1990, writ denied) ("A party may plead and prove totally inconsistent claims and defenses in Texas."). The Policy requires Defendant to indemnify either (i) the Directors and Officers, pursuant to part I.A, for "Loss[es]" for which Westcott has not indemnified them, or (ii) Westcott, under part I.B, if and only to the extent that Westcott has indemnified those Directors and Officers. *See* Document No. 14 ex. A-1 § II. In short, the Policy provides only a single recovery for each "Loss," apportioned between the insured officers and directors and their corporate employer. Accordingly, Plaintiffs have pleaded that Westcott "indemnified" its Directors and Officers, thereby entitling Westcott (and only Westcott) to coverage, and, alternatively, that Defendants are "obligated to pay the Loss of the Officers and Directors." Document No. 14 ex. A ¶ 17. These inconsistent assertions embody Plaintiffs' right to assert mutually exclusive claims so as to preserve the possibility of recovery under different policy provisions. *See, e.g.*, Pulliam v. Gulf Lumber Co., 312 F.2d 505, 507 (5th Cir. 1963) (holding the trial judge

erroneously forced the plaintiff to elect between a claim under the state workman's compensation act and one based on common law negligence); Laurence v. Atzenhoffer Chevrolet, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003) (Rainey, J.) ("Until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories.").

Under the facts pled, it should be expected that Hopkins and his fellow Plaintiffs would have pled in the alternative either Westcott's entitlement or the Directors' and Officers' entitlement to recover under the Policy. Defendants themselves highlight the controversy over whether Westcott indemnified its directors and officers by their own adamant statement that Defendants "do not admit that Westcott indemnified the directors and officers for any Loss, or that Westcott is entitled any coverage under the Policy." (emphasis in original). Document No. 2 at 5 n. 11. In a separate motion to dismiss Westcott's claims, Defendants allege "Westcott simply did not indemnify the directors and officers for any covered loss." Document No. 7 at 7. If Westcott did not indemnify the Directors and Officers, as Defendants insist, then the Directors and Officers who are insureds understandably desire to assert in the alternative their claim for recovery of the Loss under terms of the Policy. The effect of the company in the interim having used money "left behind" by a senior secured creditor to finance the litigation simply adds complexity to the facts of the case and

further reason for pleading alternative causes of action. On these pleadings it cannot be said that Plaintiff Hopkins (and his fellow Plaintiffs) as a matter of law have no claim to assert against Defendants in state court. Defendants have not met their "heavy burden" to establish that Plaintiff Hopkins and his fellow Directors and Officers have no reasonable basis and no possible cognizable claim against Defendants on the Policy which, on its face, provides coverage for Hopkins and the other Directors and Officers as insureds.

Defendants additionally contend that the Directors and Officers, having received contribution from a third party, neither pleaded nor incurred a compensable "Loss" under the Policy. *See* Document No. 18 at 4-5, 7-8. Underlying these assertions is Defendant's interpretation of "Loss" to require out-of-pocket expense to the insured. Defendants' arguments on whether there was a Loss are better left to the summary judgment or trial stages of the case; they do not establish that Plaintiff Hopkins along with his fellow Plaintiffs improperly joined in filing this suit on the Policy.

### D. Order

For the foregoing reasons, it is

ORDERED that Plaintiffs' Motion to Remand (Document No. 14) is GRANTED, and this case is REMANDED to the 55th Judicial District Court of Harris County, Texas.

The Clerk will mail a certified copy of this Order to the Clerk of the 55th Judicial District Court of Harris County, Texas as required by 28 U.S.C. § 1447, and shall notify all parties and provide them with a true copy of this Order.

SIGNED in Houston, Texas, this 24th day of October, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE